IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LYNNETTE F. RAY,

                    Plaintiff,

vs.                                    Case No. 12-4029-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits and supplemental security income payments.

The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 10, 2010, administrative law judge (ALJ) Michael D. Shilling issued his decision (R. at 15-29). Plaintiff alleges that she has been disabled since January 23, 2009 (R. at 15). Plaintiff is insured for disability insurance benefits through September 30, 2011 (R. at 17). At step one,

4

the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 17).  At step two, the ALJ found that plaintiff had the following severe impairments: affective mood disorder, anxiety related disorder, obesity and disorders of the back (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18).  After determining plaintiff's RFC (R. at 19), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 27).  At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 27-28).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 28).

**III.   Did the ALJ err in his consideration of the treating source opinions?**

The record includes a mental impairment questionnaire prepared by Dr. Mohiuddin, plaintiff's treating psychiatrist, which is dated March 9, 2009 (R. at 335-340).  In his report, he indicated that plaintiff had a "fair"[1] ability to perform in 15 categories, and a "good"[2] ability to perform in 10 other categories (R. at 338-339).  Dr. Mohiuddin further indicated that plaintiff had "marked" limitations in maintaining social

---

[1] "Fair" is defined as: the ability to function in this area is seriously limited, but not precluded (R. at 337).

[2] "Good" is defined as: the ability to function in this area is limited but satisfactory (R. at 337).

functioning, and is maintaining concentration, persistence, or pace (R. at 340).

The ALJ concluded that plaintiff only had moderate difficulties with social functioning, and moderate difficulties with concentration, persistence, or pace (R. at 24). In his RFC findings, the ALJ included the following mental limitations:

> With regard to mental limitations, the claimant would be limited to jobs that do not demand attention to details, complicated job tasks or instructions. In addition, the claimant requires a job that does not involve close cooperation/interaction with co-workers, in that, she would work best in relative isolation and requires only occasional cooperation/interaction with the general public. The undersigned finds that the claimant could maintain attention and concentration for a minimum two-hour period at a time; accept supervision on a basic level; and, adapt to changes in the workplace on a basic level.

(R. at 19). In making the above RFC findings, the ALJ gave "great weight" and "significant weight" to the opinions of Dr. Adams (R. at 24, 25). Dr. Adams prepared a psychiatric review technique form and a mental RFC assessment (R. at 438-450, 452-454). The ALJ's mental RFC findings reflect those categories in which Dr. Adams found that plaintiff was moderately limited (R. at 452-453). The findings of the ALJ in the four broad functional areas also match the opinions of Dr. Adams (R. at 23-24, 448). However, the findings of the ALJ do not include or incorporate all of the categories in which Dr. Mohiuddin found

that plaintiff's ability to perform the activity was only

"fair."[3]

    In regards to the opinions of Dr. Mohiuddin, the ALJ

stated:

> Dr. Mohiuddin found the claimant would have
> marked difficulties in maintaining social
> functioning and concentration, persistence
> or pace… He also assessed the claimant's GAF
> score at 47…If the undersigned were to adopt
> the doctor's opinion in its entirety, the
> claimant would meet Listing 12.04 or 12.06.
> While the undersigned concurs with some of
> the limitations set out in this
> questionnaire, the doctor's assessments of
> the "B" criteria are inconsistent with his
> other ratings…It appears the doctor relied
> quite heavily on the subjective report of
> symptoms and limitations provided by the
> claimant, and seemed to uncritically accept
> as true most, if not all, of what the
> claimant reported.  As explained elsewhere
> in this decision, there are good reasons for
> questioning the reliability of the
> claimant's subjective complaints.  Further,
> the possibility always exists that a doctor
> may express an opinion in an effort to
> assist a patient with whom he or she
> sympathizes for one reason or another.
> Another reality, which should be mentioned,
> is that patients can be quite insistent and
> demanding in seeking supportive notes or
> reports from their doctors, who might
> provide such a note in order to satisfy
> their patient's requests and avoid
> unnecessary doctor/patient tension.  While
> it is difficult to confirm the presence of
> such motives, they are more likely in

---

[3] For example, Dr. Mohiuddin opined that plaintiff's ability to function in the following areas was seriously limited, but not precluded:  (1) remember work-like procedures, (2) maintain regular attendance and be punctual within customary, usually strict tolerances,  (3) complete a normal workday and workweek without interruptions from psychologically based symptoms, and (4) perform at a consistent pace without an unreasonable number and length of  rest periods  (R. at 338); by contrast, Dr. Adams opined that plaintiff was not significantly limited in these four categories (R. at 452-453).  The ALJ did not include any of these limitations in his RFC findings.

>           situations where the opinion in question
>           departs substantially from the rest of the
>           evidence of record, as in the current case.

(R. at 26-27, emphasis added).

In discounting the opinions of Dr. Mohiuddin, the ALJ asserted that the doctor relied quite heavily on plaintiff's subjective reports, that the doctor's opinions reflect an effort to assist a patient with whom he sympathizes, and that the doctor's opinions may reflect an effort to satisfy their patient's requests and avoid unnecessary tension.  At the end of this summary, the ALJ conceded that it is difficult to confirm the presence of such motives, but stated that they are more likely in situations when the opinion departs from the rest of the evidence.

In his report, Dr. Mohiuddin set forth the clinical findings, including results of mental status examinations, which demonstrate the severity of plaintiff's mental impairments and symptoms.  He further indicated that plaintiff was not a malingerer.  He found that plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation (R. at 336).  At no time does his report indicate that he: 1) relied quite heavily on plaintiff's subjective reports and uncritically accepted as true most, if not all, of what plaintiff reported, or 2) that the opinions reflect an effort to assist a patient with whom he

sympathizes, or 3) that the report reflects an effort to avoid unnecessary tension with the patient who is insistent and demanding in seeking supporting notes or reports. Furthermore, the ALJ fails to cite to any evidence anywhere in the record to support these assertions.

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824; see Garcia v. Barnhart, 188 Fed. Appx. 760, 763-766 (10th Cir. July 13, 2006); Yohe v. Astrue, Case No. 10-1396-SAC (D. Kan. Jan. 10, 2012; Doc. 22 at 9-12)(ALJ erred by erroneously asserting that the medical opinions were simply based on claimant's subjective complaints); Field v. Astrue, Case No. 10-4056-SAC (D. Kan. Aug. 2, 2011; Doc. 25 at 17-19)(ALJ erred by erroneously stating that medical opinions based only or primarily on plaintiff's subjective complaints); Frye v. Astrue, Case No. 10-1251-SAC (D. Kan. July 6, 2011; Doc.

13 at 12-13)(same); <u>Farmer v. Astrue</u>, Case No. 10-1284-SAC (D. Kan. May 25, 2011; Doc. 16 at 10-12)(same); <u>Baker v. Astrue</u>, Case No. 10-1253-SAC (D. Kan. Apr. 20, 2011; Doc. 16 at 10-13)(same); <u>Moore v. Astrue</u>, Case No. 09-2549-SAC (D. Kan. Nov. 30, 2010; Doc. 23 at 9-11)(same); <u>Coleman v. Astrue</u>, Case No. 09-1338-SAC (Nov. 30, 2010; Doc. 20 at 11-13)(same).

As <u>Langley</u> makes clear, the ALJ must have either a legal or evidentiary basis for asserting that the medical source report was based only or primarily on plaintiff's subjective complaints or was an act of courtesy to a patient.  This was reaffirmed in <u>Victory</u>, and in subsequent opinions of this court.  In the case before the court, the ALJ did not have either a legal or an evidentiary basis for any of the three assertions set forth in his opinion.  The ALJ clearly gave less weight to the opinions of Dr. Mohiuddin, and did not include in his RFC findings some of the limitations included in Dr. Mohiuddin's report.  In light of the clear errors by the ALJ for discounting the report of Dr. Mohiuddin, this case shall be remanded in order for the ALJ to properly consider the opinions of Dr. Mohiuddin.

The record also contains the following letter from Marsha Bacote-Alleyne, ARNP, who also treated the plaintiff; it is dated June 7, 2010:

> Per your request, I am sending this letter
> to update the above named client's
> limitations and restrictions based on the

11

> form previously completed by Dr. S.
> Mohiuddin, MD. **Ms. Ray's diagnoses have
> been changed to include Dissociative
> Identity Disorder and Post Traumatic Stress
> Disorder. Ms. Ray's dissociative disorder
> would further impair her ability to make
> work related decisions, accept criticism,
> remember instructions and get along with
> peers**. The remainder of the findings in Dr.
> Mohiuddin's assessment remain unchanged.

(R. at 556, emphasis added). The ALJ never mentioned this

letter in his decision.

An ALJ must evaluate every medical opinion in the record.

Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This

rule was recently described as a "well-known and overarching

requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th

Cir. Apr. 26, 2011). Even on issues reserved to the

Commissioner, including plaintiff's RFC and the ultimate issue

of disability, opinions from any medical source must be

carefully considered and must never be ignored. Social Security

Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will"

evaluate every medical opinion that they receive, and will

consider a number of factors in deciding the weight to give to

any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It

is clear legal error to ignore a medical opinion. Victory v.

Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

Furthermore, according to SSR 96-8p:

> If the RFC assessment conflicts with an
> opinion from a medical source, the

> adjudicator must explain why the opinion was
> not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion.  Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

Marsha Bacote-Alleyne is an ARNP, or an advanced registered nurse practitioner.  The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources."  SSR 06-03p, 2006 WL 2329939 at *1.  "Acceptable medical sources" include licensed physicians and licensed or certified psychologists.  20 C.F.R. § 404.1513(a)(1)-(2); 20 C.F.R. § 404.1502.

A nurse practitioner is not an "acceptable medical source" under the regulations.  20 C.F.R. § 404.1513(a).  However, evidence from "other medical sources," including a nurse practitioner, may be based on special knowledge of the individual and may provide insight into the severity of an

impairment and how it affects the claimant's ability to
function.  Opinions from other medical sources are important and
should be evaluated on key issues such as impairment severity
and functional effects, along with the other relevant evidence
in the file.  The fact that an opinion is from an "acceptable
medical source" is a factor that may justify giving that opinion
greater weight than an opinion from a medical source who is not
an "acceptable medical source" because "acceptable medical
sources" are the most qualified health care professionals.
However, depending on the particular facts in a case, and after
applying the factors for weighing opinion evidence, an opinion
from a medical source who is not an "acceptable medical source"
may outweigh the opinion of an "acceptable medical source,"
including the medical opinion of a treating source.  SSR 06-03p,
2006 WL 2329939 at **2,3,5.

     The case record should reflect the consideration of
opinions from medical sources who are not "acceptable medical
sources."  The adjudicator generally should explain the weight
given to opinions from these "other sources," or otherwise
ensure that the discussion of the evidence in the determination
or decision allows a claimant or subsequent reviewer to follow
the adjudicator's reasoning, when such opinions may have an
effect on the outcome of the case.  SSR 06-03p, 2006 WL 2329939
at *6.

ARNP Marsha Bacote-Alleyne is a treating medical source, although not an acceptable medical source.  As the regulations and rulings make clear, her opinions cannot be ignored, especially when her report indicates that the plaintiff has new diagnosed impairments, which, according to the ARNP, would further impair her ability to make work related decisions, accept criticism, remember instructions, and get along with peers.  Therefore, on remand, the ALJ shall consider the report from ARNP Bacote-Alleyne in accordance with SSR 06-03p.

**IV.  Other issues raised by the plaintiff**

Plaintiff also argues that the ALJ erred in finding that plaintiff does not meet listed impairments 12.04 and 12.06, that the ALJ's credibility determinations are not supported by the record, and that the ALJ's RFC findings are not supported by the record.  The court will not discuss these issues in detail because they may be affected by the ALJ's resolution of the case on remand after giving proper consideration to the opinions of Dr. Mohiuddin and ARNP Bacote-Alleyne.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

The court will briefly address one issue in order to expedite the resolution of this case when it is remanded.  At one point in his opinion, the ALJ stated that if plaintiff's actual GAF score was 30, "it would be reasonable to expect her doctors would have been concerned enough to at least recommend

inpatient treatment" (R. at 23).  However, the ALJ failed to cite to any evidence, regulation, or ruling in support of this assertion.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Dannels v. Astrue, Case No. 10-1416-SAC (D. Kan. Dec. 20, 2011; Doc. 19 at 10); Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  Furthermore, the adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  The ALJ erred by failing to provide either an evidentiary or legal basis for such a statement.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 13th day of February, 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge